O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br>Plaintiff/Respondent, <br><br>v. <br><br>KENDRA MARLYN TRICE, <br><br>Defendant/Petitioner. | Case No. EDCV 07-1561-VAP <br>**Case No. EDCR 02-0063-VAP** <br><br>**[Motion filed on November 30, 2007]** <br><br>**MEMORANDUM AND ORDER DENYING MOTION UNDER 28 U.S.C. SECTION 2255 TO VACATE OR SET ASIDE CONVICTION** |

On or about November 30, 2007, <u>pro se</u> Petitioner Kendra Trice filed a Motion for Relief Pursuant to 28 U.S.C. section 2255 ("Mot."). Respondent filed its Response to the Motion on September 5, 2008. In her Petition, Petitioner challenges her October 10, 2003[1] conviction of violation of 21 U.S.C. section 846, Conspiracy to Possess with the Intent to Distribute and to Distribute Cocaine Base (Crack). Petitioner's conviction followed a guilty verdict returned by a jury on Count One of the First Superseding Indictment.[2] Although the Motion states Petitioner was convicted also of the crime of being a felon in possession of a

---

[1] The Motion incorrectly lists the date of conviction as October 3, 2003. Mot. at 2.

[2] The jury also found, by means of answers to questions on a special verdict form submitted to it, that the controlled substance in question was crack cocaine, and that Petitioner's commission of the offense of conviction involved at least five grams but less than 50 grams of that substance. Doc. No. 587.

firearm, (Mot. at 2), that assertion is incorrect.  See Doc. nos. 731, 732 (Minutes of Sentencing; Judgment & Commitment Order).

## II. DISCUSSION

**A.  Ineffective Assistance of Counsel**

Petitioner claims her counsel at trial and sentencing failed to render effective assistance of counsel to her.  Mot. at 5.

To establish ineffective assistance of counsel, Petitioner must prove (1) "counsel's representation fell below an objective standard of reasonableness," and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.  Strickland v. Washington, 466 U.S. 668, 688, 694 (1984).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694.  Under the second component, Petitioner must demonstrate her attorney's errors rendered the result unreliable or the proceedings fundamentally unfair.  Fretwell v. Lockhart, 506 U.S. 364, 372 (1993); Strickland v. Washington, 466 U.S. at 694.

A claim of ineffective assistance of counsel requires proof of both of these elements.  "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant.... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed."  Strickland v. Washington, 466 U.S. at 697.

**1.  Alleged failures on the part of trial counsel**

Petitioner argues that various alleged failures and errors on the part of her trial counsel entitle her to relief under section 2255.

2

### a. "Personal use" defense

First, Petitioner claims her attorney "did not argue to the jury at the trial that they could find a lesser amount of drugs for personal use." Mot. at 5 & unnumbered page preceding ("4a").  As the Government points out in its Opposition to the Motion, counsel for Petitioner defended the case against her on the theory that *if* the jury found she possessed any controlled substance, it was strictly for personal use.  That the jury accepted this defense, at least in part, is evident from its finding on the special verdict that Petitioner's commission of this offense – unlike her two codefendants at trial – involved between five and 50 grams of crack cocaine, a lesser finding than that sought by the prosecution.  Thus, Petitioner has not shown either that her lawyer's conduct of her defense in this regard fell below an "objective standard of reasonableness," nor that "but for" his performance, she would not have been convicted, much less has she satisfied both prongs.

### b. Expert testimony regarding "coded language"

Next, Petitioner faults her counsel's performance because he did not retain an expert witness to testify regarding the coded language used by drug traffickers during their conversations.  Mot. at 5.   Petitioner does not overcome the strong presumption that her attorney exercised reasonable trial strategy in opposing the admission of the testimony regarding  the "coded language" used by persons engaging in drug transactions, and after failing to win preclusion of the evidence, cross-examining vigorously.  See Strickland, 466 U.S. at 689-90; Coleman, 150 F.3d at 1113.

At trial, the Government offered the testimony of Keenan Lambert, a sergeant with the Riverside Sheriff's Office, as an expert witness on the subject of the use and meaning of coded language during drug traffic trafficking transactions.  Defendants objected to the admissibility of this testimony, and on October 2, 2003, the Government filed a Memorandum of Points and Authorities on this subject, and the Court conducted a hearing

pursuant to Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993); and Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999) regarding its admissibility.  During the Daubert hearing, the witness was examined on direct and cross examination regarding his proposed opinions as to specific words and terms in the wiretapped conversations; defense counsel had the opportunity to argue the grounds for their contention that the Court should not allow the jury to hear this testimony.   After considering all evidence and argument presented in the Daubert hearing, the Court overruled the objections and found the proposed testimony admissible, relying in particular on the Ninth Circuit's decisions in U.S. v. Hermanyk, 289 F.3d 1076 (9th Cir. 2002) and U.S. v. Plunk, 153 F.3d 1011 (9th Cir. 1998).

Petitioner's trial counsel cross-examined the witness vigorously after he testified, eliciting that Sergeant Lambert had never met Petitioner, could not recognize her voice on the wiretapped conversations, and that there were certain indications that the person identified as "KT" on the transcript was speaking fast, which could be an indication that she was a cocaine user.  This last point supported the strategy trial counsel employed at trial, i.e., that Petitioner was not a member of the conspiracy because she was a drug user who would not be trusted by the other members of the conspiracy to traffic in drugs. See Kimmelman v. Morrison, 477 U.S. 365, 386 (1986)(noting that the reviewing court should assess counsel's overall performance throughout the case).

Petitioner's attorney's decision to rely on his attempt to preclude the evidence of Sergeant Lambert, and if unsuccessful, cross-examine the government's witness,  as a means to challenge the "coded language" evidence was an objectively reasonable strategy decision. See, e.g., Coleman, 150 F.3d at 1114-15 (although trial counsel did not request a continuance to consult an expert concerning blood test results, he nonetheless performed adequately by effectively cross-examining the prosecution's witness concerning

1  his performance of the testing, and by consulting with a defense expert to prepare his
2  cross-examination); Furman v. Wood, 169 F.3d 1230, 1235 (9th Cir. 1999) (attorney's
3  failure to clarify defense expert's testimony was reasonable where the attorney's
4  declaration showed that his decision was a tactical decision to minimize evidence about
5  the petitioner's drug use).

7       The Court further notes that Petitioner's attorney's performance stands in stark
8  contrast to cases in which the trial attorney did nothing to respond to a critical piece of the
9  prosecution's case. Cf. Hart v. Gomez, 174 F.3d 1067, 1071 (9th Cir. 1999)(finding that
10 defense attorney's failure to investigate or introduce evidence that would have
11 corroborated the testimony of a key defense witness constituted deficient performance);
12 Turner v. Duncan, 158 F.3d 449, 456-57 (9th Cir. 1998)(finding that defense attorney's
13 total failure to investigate and prepare a defense constituted deficient performance).

15      Petitioner also fails to satisfy the prejudice prong of the Strickland test on this claim.
16 To prove prejudice, she must demonstrate a reasonable probability that if the defense had
17 presented expert testimony concerning coded language, the result of the trial would have
18 been different. Strickland, 466 U.S. at 694. Petitioner has failed to submit any evidence
19 that any expert witness was available and qualified to testify on her behalf on this subject
20 to support her claim that she was prejudiced by her attorney's failure to present expert
21 testimony to rebut Sergeant Lambert's testimony. In evaluating the prejudice prong, the
22 Court must consider the content of a petitioner's proposed witness's testimony, and must
23 determine how that testimony would have affected the evidence presented at trial. See
24 Strickland, 466 U.S. at 695-696; Coleman, 150 F.3d at 1116. Furthermore, in considering
25 the effect of any such proposed "coded language" evidence, the Court also is to consider
26 the totality of the evidence against petitioner. See Strickland, 466 U.S. at 695-696;

1  Coleman, 150 F.3d at 1116.  Therefore, no relief is warranted based on this claim of
2  ineffective assistance.

### c.  Failure to object to wiretap voice identification

Petitioner contends her trial counsel failed to represent her effectively because he did not object to the identification of her voice on the wiretapped recordings played during trial.  Mot. at 5, 4a.  This claim lacks merit; Petitioner's counsel objected consistently and cross-examined the Government's witnesses regarding the identification of Petitioner's voice on the tape recordings played during trial.

For example, the Government's first witness at trial, Drug Enforcement Administration Special Agent Michael Beyer, testified about the installation of the wiretap devices on two cellular telephones, and the techniques used for collecting the data and identifying speakers.  Petitioner's trial counsel cross-examined Special Agent about the effectiveness of the voice techniques employed by those working on the transcription, and established that absent identification on the monitor or by the caller, identification could be a problem.  Her trial counsel also established gaps existed during the time the wiretapped lines were monitored.  Likewise, during his cross-examination of the case agent, Tiffany Ashcraft, he established that she had only spoken to Petitioner for five to eight minutes the day Petitioner was arrested, had no training in voice identification, and listened to over 7,000 conversations, some of which had been minimized, covering a period of approximately 14 months.  Petitioner has not established that her attorney's performance fell below the objective standard of reasonable, much less that she was prejudiced by any failure on his part with respect to the evidence regarding identification of her voice on the tape recordings introduced at trial in this case.

1    Petitioner also argues her trial counsel performed ineffectively because he failed to
2 obtain a chemical analysis of the controlled substances which were the subject of the
3 charges at trial.  Mot. at 5a.  At trial, the government called a DEA forensic chemist,
4 Fracia Martinez, to testify that cocaine base and caffeine, a cutting agent, had been found
5 on a scale seized from one of Petitioner's coconspirators.  It also called Jane Whitworth,
6 who determined the nature and amount of the cocaine base seized from the premises of
7 another coconspirator.  Petitioner offers no proposed witness her counsel should have
8 called to challenge this evidence, who did not stipulate to the nature or amount of the
9 controlled substances the Government sought to introduce into evidence but instead put
10 the Government to its burden. To prove prejudice, Petitioner must demonstrate a
11 reasonable probability that if the defense had presented expert testimony on the chemical
12 analysis of the controlled substances at issue, the result of her trial would have been
13 different. Strickland, 466 U.S. at 694.  She has failed to do so.
14
15    Furthermore, defense counsel cross-examined the pertinent witness, Agent
16 Ashcraft, to elicit the evidence that when Petitioner was arrested during the search of her
17 residence, no crack cocaine was found on her person, and she was arrested only for being
18 under the influence of a controlled substance.  Thus, Petitioner has satisfied neither prong
19 of the Strickland test, prejudice nor deficient performance as to this claim.
20
21              **d.    Alleged speedy trial violations**
22    Petitioner complains of various alleged violations of her right to a speedy trial.  Mot.
23 at 4a.   All of them lack merit, as the record reveals that Petitioner either consented to any
24 continuance ordered, or her counsel indeed opposed it but the Court overruled his
25 opposition.  Even construing her claim as one that her trial counsel erred by failing to
26 pursue a motion to dismiss for violation of her constitutional speedy trial rights, it lacks
27
28

merit. In evaluating such a claim, the Court considers the likelihood that such a motion would have been meritorious. See James v. Borg, 24 F.3d 20, 27 (9th Cir. 1994).

A court assesses four factors in determining whether the Sixth Amendment right to a speedy trial has been violated: (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant asserted the right; and (4) whether the defendant suffered prejudice as a result of the delay. Doggett v. United States, 505 U.S. 647, 651 (1992); Barker v. Wingo, 407 U.S. 514, 530 (1972).

The Court first must consider whether the length of delay is sufficient to trigger further inquiry. Doggett, 505 U.S. at 651-52; Barker, 407 U.S. at 530. In Doggett, the Supreme Court held that a delay of eight and one-half years between indictment and arrest "clearly" triggered the speedy trial inquiry, 505 U.S. at 652; the Ninth Circuit has held a five year delay between indictment and arrest was sufficient to trigger the inquiry, United States v. Aguirre, 994 F.2d 1454, 1456 (9th Cir. 1993), and even a six-month delay between indictment and trial on an uncomplicated charges is a "borderline" delay that may be sufficient to trigger an inquiry into the remaining factors. United States v. Valentine, 783 F.2d 1413, 1417 (9th Cir. 1986); United States v. Simmons, 536 F.2d 827, 831 (9th Cir.), cert. denied, 429 U.S. 854 (1976). As the Doggett Court noted, however, the significance of any delay necessarily depends on the nature of the charges, 505 U.S. at 652 n.1, and "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." Barker, 407 U.S. at 530-31.

Here, Petitioner originally was charged in an eight count indictment which named 12 defendants and charged a broad-ranging crack cocaine trafficking conspiracy. The defendants filed multiple motions to suppress evidence, for severance of trial, for identification of confidential informants and for other forms and types of pretrial relief. See,

e.g., Doc. nos. 137, 139, 180, 193, 218, 222, 237, 407, 412, 417, 434, 464, and 527. Nearly all of the defendants who were convicted either after entry of a guilty plea or a jury verdict received sentences of ten years imprisonment or longer; one was sentenced to twenty years imprisonment and one to 295 months incarceration. In short, this was not a single defendant case charging one or two counts of "street crime."

Eventually, all but three defendants pled guilty, and Petitioner and two codefendants proceeded to trial on September 30, 2003, 15 months after the indictment was filed on June 6, 2002. Doc. nos. 2, 567. The Court finds this was not undue delay given the seriousness, magnitude and complexity of the charges, the length of trial and the multiple defendants, but nevertheless considers the remaining factors.

"The flag all litigants seek to capture is the second factor, the reason for delay." United States v. Loud Hawk, 474 U.S. 302, 315 (1986). A deliberate attempt to delay the trial in order to hamper the defense is weighed heavily against the government. Barker, 407 U.S. at 531.

The case originally was set for trial on August 20, 2002. Doc. no. 132. Thereafter, at the joint request of the Government and all defendants, and on a showing of good cause and in the interest of justice, the trial date was continued to November 5, 2002 Doc. no. 161; Petitioner and her counsel agreed to that continuance. On October 10, 2002, codefendant Robert Jackson filed a Motion to Continue the trial, in which other codefendants joined; Petitioner's counsel opposed that motion, in writing, on October 17, 2002 (Doc. no. 194), but nevertheless, on October 28, 2002, the Court granted a continuance of the trial to February 11, 2003, finding a continuance necessary in the interests of justice. Doc. no. 218. Trial did not begin on February 11, 2003 because on January 20, 2003, all defendants sought another continuance, the Court found the

requested continuance to be in the interests of justice and continued the trial to March 11, 2003.  Doc. no. 288.  Again, on February 24, 2003, on the request of Petitioner and her codefendants, the Court continued the trial upon a sufficient showing of good cause to May 27, 2003.  Doc. no. 302.

On July 1, 2003, the Government filed a First Superseding Indictment; Petitioner and codefendants were arraigned on the First Superseding Indictment on July 9, 2003 (Doc. no. 400) and a trial date on the charges in the First Superseding Indictment was set on August 19, 2003.   At the Pretrial Conference conducted on August 11, 2003, the Court granted a short continuance of the trial, to September 30, 2003, because Petitioner's counsel just had suffered a family tragedy and was unable to attend the conference.

In sum, the record reveals Petitioner's trial date was continued three times on defense motions for further preparation, once because Petitioner's counsel was unexpectedly and unavoidably absent due to a family tragedy,  and once on the Government's motion at the very outset of the case, to which Petitioner did not object. Thus, the predominant reason for the delay was to permit additional defense preparation. This factor does not weigh in Petitioner's favor.

The third factor, whether the defendant asserted her speedy trial rights, is difficult to evaluate properly here, because Petitioner contends her attorney was at fault for not asserting the right.  The record does refute that charge to some extent, however; Petitioner's counsel did oppose the Motion to Continue Trial filed by codefendant Robert Jackson, but the Court granted the continuance over Petitioner's objection.

In considering prejudice to Petitioner under the fourth factor, the following types of prejudice may occur: (1) oppressive pretrial incarceration; (2) anxiety and concern of the

accused; and (3) impairment of the defense due to loss of evidence. Doggett, 505 U.S. at 654; Barker, 407 U.S. at 532. Of these forms of prejudice, impairment of the defense is the most serious. Doggett, 505 U.S. at 654; Barker, 407 U.S. at 532.

Petitioner fails to present any concrete examples of how her defense was impaired because of the delay. But see Doggett, 505 U.S. at 655 (noting that "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify."). The record, however, indicates that the defense sought three continuances for additional preparation, and Petitioner joined in two of them, and sought one continuance herself due to her counsel's unavoidable absence. This suggests that rather than being prejudiced, Petitioner actually benefitted from the delay. More importantly, a complex case such as this that begins trial 15 months after indictment is not an example of "excessive delay."

Finally, Petitioner gained release from pretrial custody after her attorney successfully challenged the order of detention, and thus was not subject to pretrial detention (much less "oppressive pretrial detention") after December 5, 2002. Up to that point, there had been only two continuances of the trial date, the first on the basis of the Government's motion, in which Petitioner joined, and the second on the basis more time was need for defense preparation, which Petitioner's lawyer opposed. On balance, Petitioner has failed to show a violation of her Sixth Amendment right to a speedy trial. See Barker, 407 U.S. at 530 (the four factors comprise a balancing test, in which the conduct of both the prosecution and the defendant is weighed). Therefore, she can not show that her trial attorney erred by failing to move to dismiss the case for violation of her speedy trial rights. See James, 24 F.3d at 27 (counsel's failure to file a futile motion does not constitute ineffective assistance of counsel).

Thus, Petitioner has failed to satisfy either prong of <u>Strickland</u> insofar as she bases her claim of ineffective assistance of counsel on any alleged failure to protect her rights to a speedy trial. She has not shown her lawyer acted below an objective standard of professional competence, because the record shows the contrary, nor has she shown that she has been prejudiced by any failure to begin trial earlier.

### e.  Other alleged malfeasance by trial counsel

Petitioner asserts other failures on the part of her trial counsel. All of them lack merit, either because they are belied by the record, or because they fail to rise to state a cognizable claim for federal habeas relief.

For example, Petitioner complains her counsel was ineffective because he failed to file a motion to sever her from her codefendants for trial. Mot. at 4a. In fact, counsel filed a Motion for Severance on Petitioner's behalf on October 17, 2002; the Court denied that Motion on October 28, 2002. Doc. nos. 193, 218.

Petitioner claims her counsel failed to seek her pretrial release. This claim, too, is belied by the record. Petitioner was arrested on June 25, 2002. The Government requested that she be detained in custody before trial and she initially was detained; her counsel succeeded in obtaining her release on bond, however, and she was released on December 5, 2002. Doc. no. 246. Petitioner complains her attorney should have sought an order transferring her to the Metropolitan Detention Center in Los Angeles, a Bureau of Prisons facility, where she could have had access to a law library. Mot. at 4a. In fact, her counsel brought a motion seeking such a transfer, not for reasons of law library access, but for medical treatment. <u>See</u> Doc. nos. 138, 139. The Court denied the request for a transfer to the MDC, but made other orders regarding her medical treatment.

12

Petitioner claims, in a conclusory fashion, that her attorney failed to inform the Court "there was a conflict of interest during the trial between and myself," (Mot. at 5), but never explains even the nature of the alleged conflict. This conclusory allegation is not sufficient to satisfy Petitioner's burden of proving actual prejudice. See United States v. Breitkreutz, 8 F.3d 688, 690 (9th Cir. 1993).

Petitioner recites a litany of complaints regarding her trial counsel's handling of the evidence of her prior convictions. Mot. at 4a and unnumbered page preceding page 5 ("5a".)  None of them support a grant of habeas relief here, either. The Government filed a Motion to admit evidence of Petitioner's prior convictions at trial in this case; Petitioner's counsel filed written Opposition, and during a hearing at which Petitioner was present, the Court denied the Government's Motion to admit the evidence of her 1987 and 1988 convictions. See Doc. nos. 434, 462, 528. No evidence regarding her prior narcotics convictions was introduced at trial. Thus, this claim for relief has no factual basis.

### 2.    Alleged failures on the part of sentencing counsel[3]

Petitioner asserts she lacked effective assistance of counsel at the sentencing stage of her case because her lawyer "failed to object to the presentence report before sentencing," and "failed to argue any downward departures," Mot. at 5. These claims are false. Her lawyer did file objections to the presentence report, and as a result, as discussed below, succeeded in reducing the Probation Office's Guideline Calculation of

---

[3]On February 24, 2004, the Court granted Petitioner's request for appointment of new counsel, relieved her trial counsel, and appointed new counsel to represent for the remainder of the case in the district court, i.e., sentencing purposes. Doc. no. 674. Insofar as Petitioner complains of an unspecified "conflict" existing between her and her trial counsel, a "conflict" between them and a breakdown in the attorney-client relationship were brought to the Court's attention at the hearing conducted on February 24, 2004, outside the presence of counsel for the Government, and the Court then appointed new counsel.

13

her sentence under the Sentencing Guidelines from 360 months to life, to 120 to 150 months.  Doc. no. 703.

Petitioner also argues her lawyer should have "file[d] a motion for objection to 851" and "failed to investigate the 851." Mot. at 4a.  Again, Petitioner's claims lack merit, both legally and factually.

First, her lawyer did object, in writing, to the Government's Notice under 21 U.S.C. § 851 seeking to enhance her sentence due to her prior drug trafficking convictions.  See Doc. no. 703 ("Response filed by Kendra Trice to Notice Under Title 21 USC 851, etc.") .  Second, insofar as Petitioner claims that she "had the right to have [my] priors alleged in the indictment" and proven to a jury, (see Mot. at 5a), the Supreme Court's decision in Apprendi v. New Jersey, 530 U.S. 466, 490 (2000) holds the Government is not required to indict or prove to a jury beyond a reasonable doubt prior convictions used to enhance a sentence.

Most importantly, however, the Court did *not* enhance Petitioner's sentence on the basis of the Government's Information Filed Pursuant to 21 U.S.C. section 851 Establishing Prior Felony Drug Offenses.  The United States Probation Office, after considering Petitioner's objection to the initial presentence report calculating an enhancement under Chapter 4 of the United States Sentencing Guidelines for Career Offender Status, issued an Addendum to its report, recalculating her Criminal History category to reflect that she should not be considered a Career Offender.  The Court agreed and sentenced Petitioner based on a criminal history category of VI to the mandatory minimum sentence of 120 months.  Thus, this claim fails as well.

Her remaining arguments concerning the alleged deficiencies of sentencing counsel[4] are so insubstantial they merit no further discussion; the Court has considered each of them and finds Petitioner has fail to satisfy either prong of the Strickland test with respect to any.

**2.     Insufficient Evidence to Sustain the Conviction**

Petitioner argues the Government presented insufficient evidence at trial to support her conviction. Mot. at 4. She failed to raise this argument on her direct appeal, and thus has procedurally defaulted it. See Bousley v. United States, 523 U.S. 614, 621 (1998). Petitioner has not made the necessary showing of cause, prejudice or actual innocence to relieve her default of this claim. See id. at 623-24,

Nevertheless, even on its merits, Petitioner's sufficiency of the evidence claim fails. "There is sufficient evidence to support a conviction if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Ali, 266 F.3d 1242, 1243 (9th Cir.2001) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)). A conviction for conspiracy under 21 U.S.C. §§ 841(a)(1) and 846 requires proof of "1) an agreement to accomplish an illegal objective; and 2) the requisite intent necessary to commit the underlying offense." United States v. Mesa-Farias, 53 F.3d 258, 260 (9th Cir. 1995); see United States v. Shabani, 513 U.S. 10, 15 (1994). The criminal agreement may be inferred from the defendant's acts pursuant to the conspiracy, or from other circumstantial evidence. See United States v. Vgeri, 51 F.3d 876, 879 (9th Cir. 1995). 'Once the existence of the conspiracy is demonstrated, evidence of even a slight connection between the defendant and the conspiracy is sufficient to establish a

---

[4] Petitioner also contends, in her third claim, that "the probation should not have found the amount of drugs for sale. . . ." Mot. at 5. The amount of drugs Petitioner was responsible for was determined in this case by the jury on special interrogatories; this claim has no basis in fact. The other arguments raised in Petitioner's third claim are meritless as well.

15

defendant's knowing participation, and seemingly innocent acts, when viewed in their proper context, may support an inference of guilt.'" United States v. Castro, 168 F.3d 502 (9th Cir. 1999).

A rational juror could have found Petitioner guilty of conspiracy with intent to distribute cocaine base. The evidence at trial consisted largely of recorded telephone conversations between defendants and Cleo Page, the head of this trafficking organization regarding the manufacturing, sales and delivery of crack cocaine; the Government's expert witness, Sergeant Lambert, testified regarding the meaning of coded portions of those conversations.  Among the telephone calls played to the jury was one between Page and Petitioner, during which she described the quality of the crack cocaine she obtained from him and another when her sister and codefendant Audra Israel arranges with Page for Petitioner to work for Page selling crack cocaine.  These are but two examples from the evidence admitted during trial illustrating how the jury reasonably could have inferred that Petitioner was involved in the conspiracy effort to sell cocaine.  The evidence here was sufficient to sustain her conviction.

**3.    Sentencing Claims**

Petitioner's fourth claim states her "sentence is excessive and unreasonable." Mot. at 5.  She argues she is entitled to relief under section 2255 because she was sentenced to 60 months which was "enhanced . . . by 60 months pursuant to the 'Reasonableness Doctrine of the Roberts Court' established by recent decisions of the US Supreme Court." Id.

As discussed above, Petitioner was sentenced to the mandatory minimum sentence of 120 months, based on her criminal history category of VI and an offense level of 26; the offense level was based on the jury's special finding that Petitioner's commission of the

offense involved at least 5 grams, but less than 50 grams, of cocaine base, pursuant to U.S.S.G. 2d1.1(c)(2). Thus, Petitioner's claim has no factual basis.

Moreover, Petitioner did not raise this issue on her direct appeal. Thus, it is procedurally barred. See Bousley v. United States, 523 U.S. 614, 621 (1998). Petitioner has not made the necessary showing of cause, prejudice or actual innocence to relieve her default of this claim. See id. at 623-24.

### III. CONCLUSION

For the reasons set forth above, the Court DENIES the Motion and dismisses this action with prejudice.

Dated: December 19, 2008

*Virginia A. Phillips*
VIRGINIA A. PHILLIPS
United States District Judge